UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LADARRIUS MERTELL SANDERS, a.k.a., TOMMY BROWN | ) ) ) | Case No. 1:17CV1950 |
| Petitioner | ) ) | JUDGE JOHN R. ADAMS |
| v. | ) ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| DAVID MARQUIS, Warden, | ) ) ) | |
| Respondent. | ) | REPORT AND RECOMMENDATION |

Before the court is the petition of Ladarrius Mertell Sanders, a.k.a., Tommy Brown ("Sanders," or "petitioner") for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. The petition is before the magistrate judge pursuant to Local Rule 72.2(b)(2). The petitioner is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio v. Sanders*, Case No. 15-CRI-070 (Ashland County Aug. 31, 2015). (R. 8, RX 7, PageID #: 83-89.)

Sanders' petition arises out of his 2015 convictions for domestic violence, intimidation of a witness or victim, falsification, and tampering with records, in the Ashland County (Ohio) Court of Common Pleas. (R. 1, petition, PageID #: 1.) He raises a single ground for relief: "Trial Counsel was ineffective for failing to file a Motion to Suppress evidence obtained as a result of an unlawful and warrantless arrest." (R. 1, § 12, PageID #: 5.) Respondent has filed an Answer/Return of Writ (R. 8), and the petitioner has filed a Traverse (R. 9).

1

For the following reasons, the magistrate judge recommends that the petition be denied.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. § 2254(e)(1); *Johnson v. Genovese*, 924 F.3d 929, 938 (6th Cir. 2019); *Thomas v. Stephenson*, 898 F.3d 693, 696 (6th Cir. 2018).  The same deference is applied to state-court factual findings made by a state appellate court based on the trial record.  *Johnson*, 924 F.3d at 938; *Carruthers v. Mays*, 889 F.3d 273, 277 n.1 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1173 (2019).  Sanders does not contest the factual determinations made by the state court.  The state court of appeals provided the following factual and procedural background:

> This case arose when V.M. met a man she knew as "Tommy Brown" on the dating website Plenty of Fish.  V.M. corresponded with "Brown," met him for dinner in Mansfield, Ohio, and very shortly thereafter allowed him to move into her apartment in Ashland, Ohio.  V.M. knew "Brown" was from Detroit, had been in prison, and had at least two Facebook profiles: one as "Tommy Brown" and one as "Kwame Kilpatrick." He had two children in Detroit whom he and V.M. traveled to pick up, but V.M. was not allowed to meet the children's mother.  The couple brought "Brown's" two young children back to Ashland to live with them.
>
> V.M. and "Brown" lived together in the Ashland apartment complex for several months, sometimes with "Brown's" children, but he kept only a few articles of clothing and shoes at the apartment.  V.M. became increasingly suspicious of "Brown" because he started leaving town for days at a time with little or no contact, even though V.M. provided him with a cell phone.  He was slow to return texts and calls.  One day "Brown" demanded cash and apartment keys from V.M. and she refused.  The two argued and the apartment manager was called to intervene.  The apartment manager told "Brown" he had to leave and was not allowed to be in the apartment, so he packed his belongings and left.
>
> V.M. did not speak to "Brown" again until April 8, 2015, when "Brown" called and said he missed her; he asked her to meet him at a nearby friend's apartment so they could talk.  "Brown" asked V.M. to put him on her apartment lease and V.M. decided she wanted to give him another chance.  The two returned to V.M.'s apartment.  On the way, they passed April Walker and Richard Clime on the apartment building steps.  Walker and Clime were familiar with V.M. and

2

"Brown," knowing the pair had lived together for several months and having seen them around the complex with "Brown's" children. As they entered the building, "Brown" asked the neighbors, "Did you miss me?"

V.M. and "Brown" went inside the apartment and an argument ensued when "Brown" accused V.M. of having another man in the house. V.M. said a friend had come over and "Brown" responded by grabbing her by the neck and choking her. V.M. could not breathe. "Brown" knocked over a coffee table and candle wax spilled on the floor.

In the meantime, Walker and Clime heard voices getting louder inside V.M.'s apartment; they heard a crash and a scream. The two knocked on V.M.'s door and Clime told "Brown" to get out. "Brown" left without further incident. Walker and Clime observed the turned-over coffee table and spilled candle wax on the floor. V.M. told the neighbors "Brown" had choked her.

At first V.M. could not find her cell phone but soon located it and called police. V.M.'s phone stopped working later that night, purportedly because candle wax melted onto the phone. Police photographed V.M.'s injuries and the overturned coffee table in the apartment. The responding officer called "Brown's" cell phone to attempt to locate him. At first, no one answered. A male answered the second call and said "Don't call this number again." A third call was unanswered. Police were not able to locate "Brown" that night.

As described infra, "Brown" was found in Mansfield about a week later and arrested; his cell phone was seized as evidence. Analysis of "Brown's" cell phone pursuant to a search warrant showed the following text exchanges on April 8, 2015 and April 9, 2015 in the wake of the domestic violence incident. Sender/recipient "Vanessa–Ashland" and "Baby Mom" are the contact names as they appeared in "Brown's" cell phone. *Sic* throughout.

\* \* \* \* \* [text messages omitted] \* \* \* \*

V.M. testified she never received the texts beginning at timestamp 11:17 p.m. on April 8 because her phone stopped working.

V.M. went to Samaritan Hospital and reported she had been choked. The E.R. nurse and physician staff noted injuries to her neck including contusions and abrasions.

On April 15, 2015, the Ashland Police Department contacted the Mansfield Police Department to advise "Brown" was believed to be in their jurisdiction. A Mansfield officer made contact with "Brown," who advised his name was

3

"Tommy Brown" and gave a date of birth but said he had no I.D. and couldn't remember his social security number.

"Brown" was booked into the Ashland County jail as "Tommy Brown," the only name he ever provided to investigators. By calling numbers in "Brown's" cell phone and cross-referencing Facebook profiles including those of "Tommy Brown" and "Kwame Kilpatrick," "Brown" was eventually identified as appellant Ladarrius Sanders. Appellant has two prior convictions in Michigan for domestic violence and a Detroit detective testified appellant had active warrants for his arrest.

At trial, appellant presented an alibi defense, arguing he was not present at the time the domestic violence offense allegedly occurred. Shaneese Ray testified she drove appellant to an unknown address in Mansfield on the night of the domestic violence offense, and Latia Porter testified appellant spent the night with her.

Appellant was charged by indictment with one count of domestic violence, a felony of the fourth degree pursuant to R.C. 2919.25(A) [Count I]; one count of intimidation of a witness or victim, a felony of the third degree pursuant to R.C. 2921.04(B)(1) [Count II]; one count of falsification, a misdemeanor of the first degree pursuant to R.C. 2921.31(A)(3) [Count III]; and one count of tampering with records, a felony of the third degree pursuant to R.C. 2913.42(A)(1) [Count IV].

Appellant entered pleas of not guilty and filed a notice of alibi pursuant to R.C. 2945.58 and Crim.R. 12.1.

The case proceeded to trial by jury. The record does not contain any motion for acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence, although appellant's trial counsel stated he "renewed" the motion for acquittal as to Counts II, III, and IV at the close of all of the evidence. The motion was overruled. Appellant also objected to the verdict form as to Count III, intimidation of a crime victim, arguing it did not comply with R.C. 2945.75. The trial court disagreed and found the verdict form read in conjunction with Count III of the indictment complied with *State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, 970 N.E.2d 891.

Appellant was found guilty as charged.

(R. 8-1, RX 12, PageID #: 136-138, 140-142 (footnote omitted); *State v. Sanders*, No. 15-COA-33, 76 N.E.3d 468, 472-474, 475 (Ohio Ct. App. Sept. 30, 2016).)

4

A. Direct Appeal

On direct appeal, Sanders raised four assignments of error:

1. Trial counsel was ineffective for failing to file a Motion to Suppress Evidence obtained as a result of Mr. Sanders' unlawful, warrantless arrest, and Mr. Sanders was prejudiced by that act as such a motion would have suppressed his statements to police concerning his identity and the booking records at the jail which were the basis of his falsification and tampering with records convictions.

2. Mr. Sanders' convictions were against the manifest weight of the evidence.

3. The trial court erred by sentencing Mr. Sanders to a felony level offense of intimidation of a victim when the jury verdict form failed to specify the level of offense or the additional factors which elevate the actual offense to a felony.

4. The trial court erred by imposing consecutive sentence[s] upon Mr. Sanders for the tampering with records conviction.

(R. 8-1, RX 10, PageID #: 97.) On September 30, 2016, the court of appeals affirmed the judgment of the trial court, in part, overruling his first and fourth assignments of error. (R. 8-1, RX 12, PageID #: 166; *Sanders*, 76 N.E.3d at 487.)

On the second assignment of error, challenging the weight of the evidence, the court found that Sanders' conviction of falsification was against the manifest weight of the evidence, and it reversed and remanded on that count alone. (R. 8-1, RX 12, PageID #: 153, 166; *Sanders*, 76 N.E.3d at 481, 487.) The state appellate court overruled the second assignment of error as to the other counts. (R. 8-1, RX 12, PageID #: 154; *Sanders*, 76 N.E.3d at 482.) The state appellate court sustained Sanders' third assignment of error relating to the intimidation conviction; his sentence for intimidation as a third-degree felony was vacated and remanded to the trial court to enter a judgment convicting him of intimidation as a first-degree misdemeanor, and to sentence him accordingly. (R. 8-1, RX 12, PageID #: 163; *Sanders*, 76 N.E.3d at 486; *see generally* R. 8-1, RX 21, PageID #: 255-256 (judgment entry on remand).)

5

Sanders filed an appeal with the Supreme Court of Ohio on November 10, 2016, setting forth the following proposition of law:

> When trial counsel fails to file a motion to suppress evidence obtained as a result of an unlawful and warrantless arrest, [See *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)], a defendant is prejudiced and denied the right to effective assistance of counsel under the Sixth Amendment of the United States Constitution and the Fourteenth Amendment's Due Process Clause as a reasonable jurist would find that such a motion would have been successful.

(R. 8-1, RX 14, PageID #: 172.) The state high court declined to accept jurisdiction of the appeal on April 19, 2017. (R. 8, RX 16; *State v. Sanders*, 148 Ohio St.3d 1445, 72 N.E.3d 658 (2017).)

### B. Rule 26(B) Application

On December 15, 2016, Sanders filed an application to reopen his appeal pursuant to Ohio App. Rule 26(B). (R. 8-1, RX 17.) Sanders argued that appellate counsel was ineffective for failing to raise the following claim:

> Appellant counsel erred to the prejudice of the Appellant by failing to argue the insufficiency of evidence to support the intimidation charge.

(R. 8-1, RX 17, PageID #: 234.)

The court of appeals denied his application to reopen. (R. 8-1, RX 20.) The court found that Sanders had failed to raise a colorable claim of ineffective assistance of appellate counsel, because the court found that his conviction was not against the sufficiency of the evidence and there was no prejudice as a result of counsel's not arguing that claim. (R. 8-1, RX 20, PageID #: 253-254.) Sanders did not appeal that ruling to the state supreme court.

## II. HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must

6

apply when considering applications for a writ of habeas corpus. Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim that was adjudicated on the merits by a state court. The Supreme Court, in *Williams v. Taylor*, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-413 (2002); *see also Lorraine v. Coyle*, 291 F.3d 416, 421-422 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405; *see also Price v. Vincent*, 538 U.S. 634, 640 (2003). A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. *Williams*, 529 U.S. at 410-12; *Lorraine*, 291 F.3d at 422.

Sanders has filed his petition *pro se*. The pleadings of a petition drafted by a *pro se* litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001) (citing *Cruz v. Beto*,

7

405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam)). No other special treatment is afforded litigants who decide to proceed *pro se*. *McNeil v. United States*, 508 U.S. 106, 113 (1993) (strict adherence to procedural requirements); *Jourdan v. Jabe*, 951 F.2d 108 (6th Cir. 1991); *Brock v. Hendershott*, 840 F.2d 339, 343 (6th Cir. 1988).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Sanders contends that trial counsel was ineffective for failing to file a motion to suppress evidence obtained as a result of his warrantless arrest. (R. 1, § 12, PageID #: 5, 21-23.) Sanders raised this claim on direct appeal. He argued that counsel's failure to move to suppress evidence prejudiced him, because he contends the motion would have resulted in a suppression of his statements to police concerning his identity and booking records at the jail, which were the basis of his falsification and tampering with records convictions. (R. 8-1, RX 10, PageID #: 97, 101-104.)

Under the Sixth Amendment to the U.S. Constitution, "the right to counsel is the right to effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 138 (2012); *Joshua v. DeWitt*, 341 F.3d 430, 437 (6th Cir. 2003) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The Sixth Circuit discussed the general standard for ineffective assistance of counsel in *Monzo v. Edwards*:

> To establish ineffective assistance of counsel under *Strickland*, the defendant must show that his counsel's performance fell below an objective standard of reasonableness and that his counsel's errors were so serious as to prejudice the defendant. Review of counsel's performance is highly deferential and requires that courts "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

8

*Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (internal citations omitted). *See generally Strickland v. Washington*, 466 U.S. 668, 689 (1984) (two-part test).

In the habeas context, this court considers petitioner's ineffective assistance claim "within the more limited assessment of whether the state court's application of *Strickland* to the facts of this case was objectively unreasonable." *Washington v. Hofbauer*, 228 F.3d 689, 702 (6th Cir. 2000). When a habeas petitioner claims that counsel was ineffective for failing to file a motion to suppress, the petitioner must "[1] prove that his Fourth Amendment claim is meritorious and [2] that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Robinson v. Howes*, 663 F.3d 819, 825 (6th Cir. 2011) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)); *see also Wharton v. Vaughn*, 722 Fed. Appx 268, 273-274 (3d Cir. 2018), *cert. denied*, No. 18-5791, 2018 WL 4190995 (U.S. Dec. 3, 2018) (quoting *Kimmelman*); *Grumbley v. Burt*, No. 13-1260, 2015 WL 327625, at *11 (6th Cir. Jan. 27, 2015).

"[T]he failure to file a [meritorious] suppression motion does not constitute *per se* ineffective assistance of counsel." *Hendrix v. Palmer*, 893 F.3d 906, 922 (6th Cir. 2018) (quoting *Kimmelman*, 477 U.S. at 384). "For such a failure to constitute deficient performance, the meritorious nature of the motion must be so plain that 'no competent attorney would think a motion to suppress would have failed.'" *Id.* (quoting *Premo v. Moore*, 562 U.S. 115, 124 (2011)). The petitioner must also show that counsel had no reasonable strategic rationale for not filing the motion. *Id.* (citing *Davis v. Lafler*, 658 F.3d 525, 537 (6th Cir. 2011) (en banc).) In addition, the petitioner cannot show prejudice if the motion to suppress would have been denied. *Carter v. Parris*, 910 F.3d 835, 839 (6th Cir. 2018) (citing *Kimmelman*, 477 U.S. at 375).

9

The Supreme Court has affirmed that courts reviewing habeas petitions must approach the state court's rulings in a highly deferential manner. The Supreme Court stated in *Harrington v. Richter* that the "pivotal question" of whether the state court's application of *Strickland* standard was unreasonable is different from simply deciding whether counsel's performance fell below *Strickland*'s standard. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The focus on habeas review is "not whether counsel's actions were reasonable," rather, the question is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

The Court in *Richter* instructed that the petitioner must show that the ruling of the state court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103; *see also Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (en banc), *cert. denied*, 566 U.S. 991 (2012) (quoting *Richter*). The Court acknowledged that, under the AEDPA, this standard was "difficult to meet," however, it was "meant to be" so. *Richter*, 562 U.S. at 102; *see also Montgomery*, 654 F.3d at 676.

The state court of appeals addressed Sanders' ineffective assistance of counsel claim as follows:

> To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See, Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. 2052, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not

10

defend a particular client in the same way." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. 2052.

Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

Appellant argues trial counsel should have filed a motion to suppress evidence stemming from his "unconstitutional, warrantless arrest." Failure to file a suppression motion does not per se constitute ineffective assistance of counsel. *State v. Boyd*, 5th Dist. Richland No. 12CA23, 2013-Ohio-1333, 2013 WL 1352240, ¶ 24, citing *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000). Counsel can only be found ineffective for failing to file a motion to suppress if, based on the record, the motion would have been granted. *State v. Lavelle*, 5th Dist. No. 07 CA 130, 2008-Ohio-3119, 2008 WL 2571700, at ¶ 47; *State v. Cheatam*, 5th Dist. No. 06–CA–88, 2007-Ohio-3009, 2007 WL 1731619, at ¶ 86. Furthermore, "[w]here the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." *State v. Drummond*, 111 Ohio St.3d 14, 41, 2006-Ohio-5084, 854 N.E.2d 1038, quoting *State v. Gibson*, 69 Ohio App.2d 91, 95, 430 N.E.2d 954 (8th Dist.1980). *See also, State v. Suiste*, 5th Dist. No. 2007 CA 00252, 2008-Ohio-5012.

Furthermore, in order to satisfy the prejudice prong of the *Strickland* test, a defendant must demonstrate that there was a reasonable probability that the motion to suppress would have been granted. *See, e.g., State v. Fair*, 2nd Dist. No. 24120, 2011-Ohio-3330, 2011 WL 2584234, ¶ 27. *See also Kimmelman v. Morrison*, 477 U.S. 365, 390–391, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Trial counsel's decision not to file a motion to suppress may be a matter of trial strategy, including counsel's reasonable assessment of whether such a motion is likely to succeed and recognition that filing a motion to suppress has risks. *Madrigal*, 87 Ohio St.3d at 389, 721 N.E.2d 52.

In the instant case, based on the evidence presented at trial, appellant cannot show trial counsel's failure to file a motion to suppress constitutes a deficiency. We disagree with appellant's assertion he was "picked [ ] up without a warrant * * *." (Brief, 8). Our review of the record reveals conflicting evidence of this assertion. The Ashland Police Department advised the Mansfield Police Department they had a warrant for appellant and believed him to be in Mansfield's jurisdiction. (T. 198). The Mansfield officer testified dispatch advised her of the existence of a warrant. (T. 204). From the inception of the domestic violence case, Ashland police suspected "Tommy Brown" was not appellant's true identity and were

11

> investigating to discover his genuine social security number and date of birth; appellant was eventually identified as "Ladarrius Sanders." A Detroit detective testified outstanding warrants existed for appellant's arrest as Sanders. (T. 58). In addition, the record is not sufficiently developed as to whether V.M. completed a domestic violence affidavit the night of the offense, which would have constituted sufficient and reasonable grounds to support appellant's warrantless arrest for domestic violence. R.C. 2935.03(B)(3)(a)(i); *State v. Christian*, 7th Dist. Mahoning No. 02 CA 170, 2005-Ohio-1440, 2005 WL 704866, ¶ 22.
>
> We conclude we cannot speculate whether the record at a suppression hearing would support a finding of unlawful arrest in the instant case. *State v. Shepherd*, 5th Dist. Richland No. 14CA63, 2015-Ohio-4330, 2015 WL 5917918, ¶ 41. We decline to evaluate this fact-specific issue on the trial record alone because evidence relevant to suppression was not developed; such is the dilemma of most appellants attempting to establish ineffective assistance for failing to file a motion to suppress. *Id.* In the case of *State v. Parkinson*, Stark App. No. 1995CA00208, 1996 WL 363435, unreported (May 20, 1996) at *3, we observed that when counsel fails to file a motion to suppress, the record developed at trial is generally inadequate to determine the validity of the suppression motion. This reasoning is applicable here because based on the record, it is unclear whether a suppression motion would have been successful. *State v. Culbertson,* 5th Dist. Stark No. 2000CA00129, 2000 WL 1701230, *4 (Nov. 13, 2000) *See also, State v. Hoover*, 5th Dist. Stark No. 2001CA00138; *State v. Dowding*, 5th Dist. Stark No. 2014 CA 00131, 2015-Ohio-1362, ¶ 53, citing *State v. Jackson*, 5th Dist. Stark No. 2005CA00198, 2006-Ohio-4453, 2006 WL 2474353, ¶ 27.
>
> We also must presume a properly licensed attorney executes his or her duties in an ethical and competent manner. *See State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Under the circumstances presented, we are not inclined to overcome this presumption with the limited information in the appellate record before us.

(R. 8-1, RX 12, PageID #: 143-146; *Sanders*, 76 N.E.3d at 476-478.)

The state court of appeals followed the correct legal standards under *Strickland* and *Kimmelman, id.* at 476-477, and determined that Sanders cannot meet his burden to show that counsel's alleged failure to file a motion to suppress constitutes deficient performance, *id.* at 477. Although petitioner contends that the record shows there was no warrant for him when he was arrested (R. 9, PageID #: 881), the state court noted there was testimony at trial that the arresting

12

officer had been advised that there was a warrant for Sanders' arrest. *Id. See generally Herring v. United States*, 555 U.S. 135 (2009) (exclusionary rule did not apply where officer reasonably believed there was outstanding arrest warrant); *United States v. Leon*, 468 U.S. 897 (1984) (good faith exception to exclusionary rule where officers acted in reasonable reliance on warrant). The state court concluded that "we cannot speculate whether the record at a suppression hearing would support a finding of unlawful arrest in the instant case." *Id.* at 477-478. The court also noted that a properly licensed attorney in Ohio is presumed competent. *Id.* at 478 (citing *State v. Smith*, 17 Ohio St. 3d 98, 100, 477 N.E.2d 1128, 1131 (1985).)

In order to show that the failure to file a motion to suppress constitutes deficient performance, "the meritorious nature of the motion must be so plain that 'no competent attorney would think a motion to suppress would have failed.'" *Hendrix*, 893 F.3d at 922 (quoting *Premo*, 562 U.S. at 124). The state court of appeals found that, on the record before it, "it is unclear whether a suppression motion would have been successful." (R. 8-1, RX 12, PageID #: 146; *Sanders*, 76 N.E.3d at 478.) The petitioner's burden is to show that the ruling of the state court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103; *see also Montgomery*, 654 F.3d at 676 (quoting *Richter*). Sanders has failed to do so.

Reviewing the state court's ruling in accordance with the guidance set forth by the U.S. Supreme Court in *Richter*, the court finds that Sanders has not demonstrated that the state court's application of *Strickland* and *Kimmelman* was unreasonable. Sanders has not established that the state court decision was contrary to, or involved an unreasonable application of, clearly

13

established federal law, as determined by the Supreme Court. Therefore, the petition should not be granted.

## IV. CONCLUSION

It is recommended that the petition be denied. The petition should not be granted because Sanders has not established that the state court decision involved an unreasonable application of clearly established federal law.

                                         s/ David A. Ruiz
                                         David A. Ruiz
                                         United States Magistrate Judge

Date: October 31, 2019

## OBJECTIONS

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72(a); LR 72.3(a). Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).